Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:      516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD GOLE,<br><br>                Plaintiff,<br><br>    vs.<br><br>LA JOLLA PHARMACEUTICAL COMPANY, KEVIN TANG, LARRY EDWARDS, CRAIG JOHNSON, LAURA JOHNSON, DAVID RAMSAY, and ROBERT ROSEN,<br><br>                Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(2) Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(3) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Richard Gole ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against La Jolla Pharmaceutical Company ("La Jolla" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(e), 14 (d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act")

as a result of Defendants' efforts to sell the Company to Inoviva, Inc. ("Parent") via subsidiary Innoviva Acquisition Sub, Inc. ("Merger Sub" and collectively with Parent, "Innoviva") as a result of an unfair process, and to enjoin an upcoming tender offer on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a July 11, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Inoviva will acquire all the outstanding shares of La Jolla common stock for $6.23 per share in cash. As a result, La Jolla will become an indirect wholly-owned subsidiary of Inoviva.

3.      Thereafter, on July 25, 2022, La Jolla filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, the Recommendation Statement describes an insufficient process with only one goal in mind – to sell the Company to Innoviva.

5.      Notably, the Recommendation Statement fails to disclose whether a committee of disinterested directors was appointed to manage the sales process, and if so, what powers that committee had in reviewing the Proposed Transaction, including whether the committee had the ability to veto a potential transaction that was not in the best interests of shareholders.

6.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff as a public stockholder.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and

executive officers will be able to exchange all Company equity awards for the merger consideration.

7.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Recommendation Statement with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their La Jolla shares in favor of the Proposed Transaction.   The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for La Jolla, provided by La Jolla to the Company's financial advisors Cowen and Company, LLC ("Cowen"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Cowen and provided to the Company and the Board.

8.      Accordingly, this action seeks to enjoin the Proposed Transaction.

9.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

### PARTIES

10.     Plaintiff is a citizen of Michigan and, at all times relevant hereto, has been a La Jolla stockholder.

11.     Defendant La Jolla engages in the development and commercialization of therapies that improve outcomes in patients suffering from life-threatening diseases. La Jolla is incorporated in Delaware and has its principal place of business at 201 Jones Road, Suite 400, Waltham, MA

02451.  Shares of La Jolla common stock are traded on the Nasdaq Stock Exchange under the symbol "LJPC".

12.     Defendant Kevin Tang ("Tang") has been a Director of the Company at all relevant times.  In addition, Tang serves as the Chairman of the Board.

13.     Defendant Larry Edwards ("Edwards") has been a director of the Company at all relevant times. In addition, Edwards serves as the company's Chief Executive Officer ("CEO") and President.

14.     Defendant Craig Johnson ("C. Johnson") has been a director of the Company at all relevant times.

15.     Defendant Laura Johnson ("L. Johnson") has been a director of the Company at all relevant times.

16.     Defendant David Ramsay ("Ramsay") has been a director of the Company at all relevant times.

17.     Defendant Robert Rosen ("Rosen") has been a director of the Company at all relevant times.

18.     Defendants identified in ¶¶ 12 - 17 are collectively referred to as the "Individual Defendants."

19.     Non-Party Inoviva is a diversified holding company with a portfolio of royalties that include respiratory assets.

20.     Non-Party Merger Sub is a wholly owned subsidiary of Inoviva created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14 (d), and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

24.     La Jolla Pharmaceutical Company engages in the development and commercialization of therapies that improve outcomes in patients suffering from life-threatening diseases. The company offers GIAPREZA, a vasoconstrictor indicated to increase blood pressure in adults with septic or other distributive shock; and XERAVA, a tetracycline class antibacterial indicated for the treatment of complicated intra-abdominal infections in patients 18 years of age and older. It offers GIAPREZA and XERAVA to hospitals and other healthcare organizations in the United States. Its product candidates that are in early stage clinical or preclinical development

include TP-6076, an IV formulation of a fully synthetic fluorocycline derivative for the treatment of certain multidrug-resistant gram-negative bacteria; TP-271, an IV and oral formulation of a fully synthetic fluorocycline for the treatment of respiratory disease caused by bacterial biothreat and antibiotic-resistant public health pathogens, as well as bacterial pathogens associated with community-acquired bacterial pneumonia; and TP-2846, an IV formulation of a tetracycline for the treatment of acute myeloid leukemia. The company has license agreement with Everest Medicines Limited to develop and commercialize XERAVA; and PAION AG to commercialize GIAPREZA and XERAVA. La Jolla Pharmaceutical Company was incorporated in 1989 and is based in Waltham, Massachusetts.

25.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the May 16, 2022 press release announcing its 2022 Q2 financial results, the Company reported milestones such as net product sales of $10.4 million, up 21% from the same period in 2021.

26.     Speaking on the results, CEO Defendant Edwards said, "We are pleased to report that La Jolla continues to grow net product sales and generate positive operating cash flow"…… "La Jolla's focus remains on growing its GIAPREZA and XERAVA franchises while increasing operating cash flow."

27.     The promise and financial results are not an anomaly, but rather, are indicative of a trend of continued future potential success by La Jolla.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

28.     Despite this upward trajectory, the Individual Defendants have caused La Jolla to enter into the Proposed Transaction without providing requisite information to La Jolla stockholders such as Plaintiff.

**The Flawed Sales Process**

29.     The Recommendation is materially deficient. The Recommendation Sheet fails to disclose whether a committee of disinterested directors was appointed to run the sale process, and if so, the specific powers that committee had in evaluating a potential transaction.

30.     In addition, the Recommendation Statement is silent as to the nature of the confidentiality agreements entered into between the Company and potentially interested third parties, including Innoviva, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way.   The Recommendation Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and any potentially interested third parties, including Innoviva, throughout the sales process, if any, would fall away.

31.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

**The Proposed Transaction**

32.     On July 11, 2022 La Jolla issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **BURLINGAME, Calif. and WALTHAM, Mass.** – July 11, 2022 – Innoviva, Inc. (Nasdaq: INVA), a diversified holding company with a portfolio of royalties and a growing portfolio of innovative healthcare assets, and La Jolla Pharmaceutical Company (Nasdaq: LJPC), which is dedicated to the commercialization of innovative therapies that improve outcomes in patients suffering from life-threatening diseases, today announced that they have entered into a definitive merger agreement whereby Innoviva will acquire La Jolla. Innoviva has agreed to pay $5.95 per share for La Jolla, representing a premium of approximately 70% to

the 30-day volume-weighted average price (VWAP), and an incremental $0.28 per share for additional cash proceeds received in connection with the divestiture of a non-core asset. Under the terms of the merger agreement, Innoviva, through a wholly owned subsidiary, will commence a tender offer on or before July 25, 2022 to acquire all of the outstanding shares of La Jolla for $6.23 per share in cash, or an implied enterprise value of approximately $149 million.

La Jolla's lead product, GIAPREZA® (angiotensin II), was approved by the Food and Drug Administration (FDA) in December 2017 to increase blood pressure in adults with septic or other distributive shock. La Jolla's second asset, XERAVA® (eravacycline), was approved by the FDA in August 2018 for the treatment of complicated intra-abdominal infections (cIAIs) in patients 18 years of age and older. This acquisition strengthens Innoviva's portfolio in infectious diseases, anchored by the company's recent purchase of Entasis Therapeutics Holdings Inc., an advanced late-stage clinical biopharmaceutical company focused on the discovery and development of novel antibacterial products.

"This acquisition represents a significant step forward in advancing our strategy to diversify operations and adds a highly complementary commercial franchise to our portfolio to accelerate long-term growth," said Pavel Raifeld, Chief Executive Officer of Innoviva. "We look forward to welcoming the La Jolla team to Innoviva and building upon the success of GIAPREZA and XERAVA."

"We are pleased to announce the acquisition of La Jolla by Innoviva, which we believe provides our stockholders with immediate value at a compelling premium," said Larry Edwards, President and Chief Executive Officer of La Jolla. "With Innoviva's shared commitment to improve outcomes in patients suffering from life-threatening diseases, Innoviva can continue to advance our mission and maximize the potential of our innovative therapies."

Assuming the minimum tender condition is met, any shares not tendered in the tender offer will be acquired in a second-step merger at the same cash price as paid in the tender offer. Closing of the transaction is subject to specified closing conditions, including that a majority of La Jolla's shares of common stock are validly tendered and not validly withdrawn. On closing, La Jolla will become a wholly owned subsidiary of Innoviva, and shares of La Jolla's common stock will no longer be listed on any public market.

The transaction was unanimously approved by the La Jolla and Innoviva boards of directors and is expected to close within 30 business days. Additionally, certain La Jolla stockholders holding approximately 40% of La Jolla's outstanding shares of common stock, have signed a support agreement under which such stockholders agreed, among other things, to tender their shares in the tender offer and support the merger.

Cowen and Company, LLC is acting as financial advisor to La Jolla and Gibson, Dunn & Crutcher LLP is acting as its legal advisor. Moelis & Company LLC is acting as financial advisor to Innoviva and Willkie Farr & Gallagher LLP is acting as legal advisor to Innoviva.

### *Potential Conflicts of Interest*

33.     The breakdown of the benefits of the deal indicates that La Jolla insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of La Jolla.

34.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.

| Name | Number of Shares (Excluding Options) | | Cash Consideration Payable in Respect of Shares |
| --- | --- | --- | --- |
| **Executive Officers** | | | |
| Larry Edwards | 11,969 | $ | 74,567 |
| Michael Hearne | 10,186 | $ | 63,459 |
| **Non-Employee Directors** | | | |
| Kevin Tang | 9,847,934 | $ | 61,352,629 |
| David Ramsay | 100,000 | $ | 623,000 |
| Craig Johnson | 12,000 | $ | 74,760 |
| Laura Johnson | 500 | $ | 3,115 |
| Robert Rosen | — | $ | |

35.     Notably, Company insiders, currently own large, illiquid portions of stock options, restricted share, or other equity award, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

| Name | Number of Options In the Money (Vested or Unvested) as of the Effective Time | Cash Consideration Payable in Respect of La Jolla Options |
|---|---|---|
| **Executive Officers** | | |
| Larry Edwards | 1,109,263 | $ 2,027,015 |
| Michael Hearne | 240,821 | $ 388,612 |
| **Non-Employee Directors** | | |
| Craig Johnson | 120,000 | $ 130,020 |
| Laura Johnson | 97,500 | $ 127,185 |
| Robert Rosen | 84,000 | $ 124,080 |
| David Ramsay | 72,000 | $ 121,200 |
| Kevin Tang[1] | 54,000 | $ 81,480 |

36.     In addition, certain employment agreements with certain La Jolla executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follow:

**Change-in-Control Compensation**

| Name | Cash ($) | Equity ($) | Perquisites/ Benefits ($) | Total ($) |
|---|---|---|---|---|
| Larry Edwards | $ 1,224,300 | $ 2,027,015 | $ 59,595 | $ 3,310,910 |
| Michael Hearne | $ — | $ 388,612 | $ — | 388,612 |

37.     The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

38.     Thus, while the Proposed Transaction is not in the best interests of La Jolla, Plaintiff

or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Recommendation Statement***

39.     On July 25, 2022, the La Jolla Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

40.     Specifically, the Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Recommendation Statement fails to disclose:

    a.  Adequate information as to whether a committee of disinterested directors was appointed to lead the sales process and if so, the powers to which they were authorized in reference to any proposed transaction;

    b.  Whether the terms of any confidentiality agreements entered during the sales process between La Jolla on the one hand, and any other third party (including Innoviva), if any, on the other hand, differed from one another, and if so, in what way;

    c.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties (including Innoviva) throughout the sales

process, if any, would fall away; and

d.   The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning La Jolla's Financial Projections*

41.   The Recommendation Statement fails to provide material information concerning financial projections for La Jolla provided by La Jolla management and relied upon by Cowen in its analyses.   The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading.

42.   Notably, in connection with its fairness opinion rendered to the Company Board regarding the Proposed Transaction, Cowen notes that it reviewed, "certain non-public information that was provided to the La Jolla Board in connection with its evaluation of the Offer."

43.   The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that La Jolla management provided to the Board and Cowen. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

44.     With regard to *La Jolla Projections - Five-Year Projections* prepared by La Jolla management, the Recommendation Statement fails to disclose material line items for all projection metrics utilized in Cowen analyses:

> a.  The Recommendation Statement fails to provide the underlying inputs, metrics, and assumptions used to calculate EBITDA, as well as a definition used for this metric;
>
> b.  The Recommendation Statement also fails to provide the underlying inputs, metrics, and assumptions used to calculate Unlevered Free Cash Flow, as well as a definition used for this metric.

45.     With regard to *Product Life Cycle Projections* for La Jolla prepared by La Jolla management, the Recommendation Statement fails to disclose material line items for all projection metrics utilized in Cowen analyses:

> a.  The Recommendation Statement fails to provide a definition for Unlevered Free Cash Flow;
>
> b.  The assumed tax rate for years 2031- 2040; and
>
> c.  The Recommendation Statement also fails to provide the underlying inputs, metrics, and assumptions used to calculate Unlevered Free Cash Flow, as well as a definition used for this metric.

46.     The Recommendation Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

47.     The Recommendation Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various cases of projections rely.

48.     This information is necessary to provide Plaintiff in his capacity as a Company

stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

49.    Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Cowen's financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction.  As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Cowen*

50.    In the Recommendation Statement, Cowen describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

51.    With respect to the *Selected Public Companies Analysis*, the Recommendation Statement fails to disclose the following:

a.    The inputs, metrics, and assumptions used to determine an implied Enterprise Value as a multiple of 2022E Revenue range of 1.3x – 2.8x;

b.    The number of fully diluted outstanding shares for each company compared; and

c.    The number of fully diluted outstanding shares of the Company.

52.    With respect to the *Selected Transactions Analysis*, the Recommendation Statement

fails to disclose the following:

     a.  The specific date on which each transaction compared closed;

     b.  The value of each transaction compared;

     c.  The number of fully diluted outstanding shares of Company stock; and

     d.  The inputs, metrics, and assumptions used to determine an implied Enterprise Value as a multiple of FY+1 Revenue reference range of 1.0x-3.0x.

53.    With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

     a.  The specific inputs and assumptions used to determine a discount rate range of 17.5%-22.5%;

     b.  The Company's weighted average cost of capital;

     c.  The value of post-tax cost of debt utilized in this analysis;

     d.  The market risk premium applied in this analysis;

     e.  The equity size premium utilized in this analysis;

     f.  The beta for the Company;

     g.  The Company's net debt;

     h.  The Company's total capitalization; and

     i.  The inputs, metrics, and assumptions used to determine terminal multiples of revenue ranging from 1.3x to 2.8x with regard to the 5 year analysis.

54.    With respect to the *Premiums Paid Analysis*, the Recommendation Statement fails to disclose the following:

     a.  The exact value of each transaction compared; and

     b.  The underlying inputs, metrics, and assumptions used to determine the selected

ranges of premiums of 23% - 367% and 46% to 121%.

55.     With respect to the *Research Analyst Price Target* analysis, the Recommendation Statement fails to disclose the following:

    a.   The specific Wall Street analyst estimate consulted;

    b.   The identity of the author and the firm that created the estimate consulted;

    c.   The inputs, metrics, and assumptions used to determine a discount rate of 19.7%; and

    d.   The Company's cost of equity.

56.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

57.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public La Jolla stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

**FIRST COUNT**

**Violations of Section 14(e) of the Exchange Act**

**(Against All Defendants)**

58.     Plaintiff repeats all previous allegations as if set forth in full herein.

59.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

60.     Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.].

61.     The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

62.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

63.     The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

64.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender

its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

65.     Plaintiff has no adequate remedy at law.

## SECOND COUNT

### Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

### (Against all Individual Defendants)

66.     Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

67.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

68.     Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

69.     SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

70.     Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

71.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

72.     Plaintiff has no adequate remedy at law.

## THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

73.     Plaintiff repeats all previous allegations as if set forth in full herein.

74.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

75.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Recommendation Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

76.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of La Jolla's business, the information contained in its filings with the SEC, and its

public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

77.    The Individual Defendants acted as controlling persons of La Jolla within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause La Jolla to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled La Jolla and all of its employees.  As alleged above, La Jolla is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.    Enjoining the Proposed Transaction;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.


Dated: July 27, 2022                                **BRODSKY & SMITH**

                                         By:  _/s/ Evan J. Smith_____
                                               Evan J. Smith
                                               240 Mineola Boulevard
                                               Mineola, NY  11501
                                               Phone:  (516) 741-4977
                                               Facsimile (561) 741-0626

                                               *Counsel for Plaintiff*